[Nos. 47508-3, 47739-6. En Banc. May 13, 1982.]

MARINO PROPERTY COMPANY, ET AL, *Appellants,* v. THE PORT COMMISSIONERS OF THE PORT OF SEATTLE, *Respondent.*

*Smith, Smart, Hancock & Tabler,* by *Walter S. Tabler* and *J. Dimmitt Smith,* for appellants.

*Preston, Thorgrimson, Ellis & Holman,* by *Michael B. Crutcher* and *Holly K. Towle (Carol S. Doherty,* of counsel), for respondent.

UTTER, J.—Appellant Marino Property Company makes numerous challenges to the Port of Seattle's attempt to convey certain tidal lands to the City. The Port claims most of Marino's claims are barred by the doctrine of res judicata. We hold the doctrine dispenses with most of Marino's claims. As to the questions Marino raises that are not barred, those involving the surplus property statute, RCW 39.33.010, we hold the statute is constitutional and the trial court's finding the property at issue is surplus was not arbitrary, capricious or contrary to law.

Since respondent Port of Seattle raises a res judicata defense to most of appellant Marino's claims, the history of this case is important. This is the second time the parties

are before us to dispute the disposition of a 24–acre parcel of tideland (referred to as parcel A). The Port is attempting to convey to the City restricted legal title to parcel A and Marino is challenging its authority to do so. The facts until 1977 are adequately summarized in our first opinion dealing with this controversy. *Marino Property Co. v. Port of Seattle,* 88 Wn.2d 822, 567 P.2d 1125 (1977) (*Marino* I). In *Marino* I, we affirmed the trial court's summary judgment for the Port (the nature of this affirmance is critical to the res judicata question and will be developed more fully in the analysis of that issue). In *Marino* I, we stated the Port's pending gift to the City was a "'transfer' within the contemplation of RCW 39.33.010." 88 Wn.2d at 834. We also specifically declined to decide if the "transfer of title is authorized as surplus property" under RCW 39.33.010 since the hearing required under that statute had not yet occurred. 88 Wn.2d at 834.

On October 28, 1980, after public hearing, the Port approved resolution 2797, which declared parcel A surplus, and attached a proposed quitclaim deed to the City. It then sought approval of its declaration in superior court pursuant to RCW 39.33.010. Marino moved to intervene in the RCW 39.33 proceeding and served interrogatories upon the Port. The Port resisted and the court held Marino had the power to appear at the hearing held pursuant to RCW 39.33.010, cross–examine Port witnesses, call its own witnesses, make opening and closing statements, review the Port's documentary evidence prior to hearing, and the right to notice of all actions in the case. The trial court, however, denied Marino's request to serve interrogatories, take depositions or subpoena witnesses.

The hearing authorized by RCW 39.33.010 took place on March 24 and 25, 1981. The trial court judge ruled parcel A was surplus and entered a decree authorizing the transfer. The court also refused to address the question of illegal motivation, holding it irrelevant to a "declaration of surplus" proceeding.

Concurrent with the above proceedings, Marino sued the

Port in a separate action to enjoin the above proceeding and have the proposed transfer declared illegal and unconstitutional. The trial court found the illegality charges barred by the doctrine of res judicata in light of our holding in *Marino* I, despite Marino's claims that the new deed and resolution 2797 presented new facts. The trial court refused to issue the injunction. This is a consolidation of both appeals.

Marino makes numerous arguments contending the Port's transfer of the property to the City is illegal. They are:

1. The transfer would illegally bind future port commissioners.

2. The transfer was based on illegal motivation.

3. The Port must create parks pursuant to RCW 53.08-.260–.270, and may not avoid such responsibilities by transferring the property "in trust" to the City.

4. Marino should have been granted full intervention rights in the RCW 39.33.010 proceeding.

5. Marino has a right to review of the trial court's declaration of "surplus".

6. The property is not surplus.

While the Port argues claims 1 through 5 are barred by the doctrine of res judicata, only 1 through 3 are appropriate for consideration under that doctrine.

In *Marino* I, the trial court held not ripe, *inter alia,* the issues of the legality of the conveyance of parcel A, the unlawful restraint claim, and whether the parcel is surplus. The court held in the alternative that if the questions of legality and unlawful restraint were ripe they were without merit.[1]

---

[1] "5. . . . Therefore, as a matter of law, the issue of the legality of the conveyance of Parcel [A] or whether Parcel [A] is surplus is not ripe for decision by this Court and an injunction to enjoin such conveyance is premature.

"6. The legislature has created a special procedure and forum for the determination of the question of the intergovernmental transfer of property. The present proceeding is not the special time and place established by the legislature for that determination. RCW 39.33.010 provides that forum and reflects the legis-

On appeal, Marino argued the above issues were ripe and the Port argued they were not ripe. Claiming they were justiciable, Marino briefed the following related issues:

(a) The pending gift to the City is illegal.

(b) The Port has no statutory power to give the land to the City.

(c) The proposed gift of parcel A is an illegal restraint on future port commissions.

We affirmed the trial court's summary judgment on appeal. The parties differ in their interpretation of our holding in *Marino* I. The Port argues we deemed the above matters ripe and disposed of them favorably to the Port by affirming the trial court's summary judgment. Marino argues that in affirming the trial court we simply affirmed its finding that the issues were not ripe and that therefore the Port was entitled to summary judgment.

In reaching our affirmance, we reasoned:

> Under the unique and limited circumstances of this case, *i.e.*, the conveyance by the Port of restricted legal title to a small portion of tidelands that is an integral part of the entire Pier complex which the Port was contractually obligated to purchase, we hold that the gift to

lative intent that some policy decisions should be left to the municipal corporation involved with a limited overview by the court as provided therein. The defendant Port of Seattle is entitled to summary judgment on this issue on the ground that the issue of the disposition of Parcel [A] is not yet ripe for determination.

"7. If the issue of the legality of the conveyance of Parcel [A] were ripe for decision, summary judgment in favor of the defendant Port of Seattle should also be granted. The Port does have authority to transfer by gift Parcel [A]. There are no genuine issues of material fact presented. The plaintiffs' claim that the Port unlawfully amended its comprehensive plan without notice or public hearing and that the Port was arbitrary and capricious in deciding to make a gift of Parcel [A] do not present genuine issues of material fact and are without merit.

"8. The conveyance of Parcel [A] is not an unlawful restraint on the actions of future Port commissions. That issue is not ripe for determination, but even if it were ripe, the court would hold that even assuming that the purpose and effect of the conveyance was to prevent future expansion of Port facilities to the west the conveyance of real property pursuant to legislative authority does not constitute the type of restraint on future power which the law prohibits." Order Granting Defendant Port of Seattle's Motion for Summary Judgment, Clerk's Papers, at 321–22.

the City is a "transfer" within the contemplation of RCW 39.33.010.

88 Wn.2d at 833–34. We deemed ripe the issues concerning the legality of the conveyance. Otherwise, we would not have stated "the gift to the City is a 'transfer' within the contemplation of RCW 39.33.010." 88 Wn.2d at 833–34. If the issue were not ripe, such language would have been extraneous.

We must nevertheless address the extent to which our holding in *Marino* I disposed of all the issues in that case, and correspondingly, the extent to which that holding is res judicata of Marino's present claims.

■ The doctrine of res judicata ensures finality of judgments.

> The doctrine of *res judicata* rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be litigated again. It puts an end to strife, produces certainty as to individual rights, and gives dignity and respect to judicial proceedings.

*Walsh v. Wolff*, 32 Wn.2d 285, 287, 201 P.2d 215 (1949).

By holding the gift was a "transfer" in *Marino* I, by necessity we decided there was statutory authority for the conveyance. While we did not specifically address the questions of illegal restraint and illegal motivation in *Marino* I, those issues were implicitly addressed through our disposition of the case. Marino's present claims in this regard (1 and 2) are thus barred by res judicata. The interim period has presented no new facts that change the issues as they were presented to this court in 1977.

Marino's claim that the Port must create parks pursuant to RCW 53.08.260–.270 (claim 3) is less easily disposed of by res judicata. In *Marino* I, Marino claimed the Port was using its bonding power to establish a park, and that the provisions of RCW 53.08.260 had not been satisfied. We held this assertion confused reacquisition of Terminal 91 (of which parcel A is a part) with subsequent disposition of

parcel A. We thus realized that Marino's claim concerning RCW 53.08.260 should have been framed as it is now framed. Thus framed, the claim should have been brought in *Marino* I, and is ostensibly barred by res judicata.

Nevertheless, Marino argues the Port's resolution 2797 presents new facts that preclude application of the doctrine. Section 2(d) of the resolution states:

> d. Use of the Property in an undeveloped state as a park is necessary to fully utilize existing docks and warehouses, and future redevelopment activity, at Terminal 91.

RCW 53.08.260 states: "A port district may . . . maintain, and operate public park and recreation facilities when such facilities are necessary to more fully utilize boat landings . . ." The inclusion of the word "necessary" does not create a new issue, however. In *Marino* I, we acknowledged the reversion clause of the proposed conveyance made it necessary for the City to keep parcel A undeveloped to retain title. 88 Wn.2d at 825–26. At the same time, we acknowledged the Port retained "most of the indicia of ownership." 88 Wn.2d at 832. To pursue the activities the Port reserved to itself, the preservation of parcel A in a "natural and undeveloped state", 88 Wn.2d at 827, was "necessary" even in *Marino* I.

Marino also argues the language of the proposed deed— that the City will keep the property "in trust"—creates a new issue. That language is simply a description of the proposed disposition of parcel A before us in *Marino* I. Marino's claim regarding RCW 53.08.260 is barred by res judicata. It should have been raised directly in *Marino* I when Marino challenged the statutory authority for disposing of parcel A.

The Port also argues Marino's claims for rights of full intervention and appeal from the RCW 39.33.010 proceeding (claims 4 and 5) are barred by res judicata since Marino briefed the question of the adequacy of RCW 39.33.010 in *Marino* I.

In *Marino* I, Marino claimed that RCW 39.33.010 was an

inadequate remedy for addressing questions as to the illegality of the transfer of parcel A (claims 1 through 3). Since we found the legality questions ripe, we agreed with Marino that there was no reason to delay resolution of those questions because the pending proceeding under RCW 39.33.010 would have been an inadequate forum for resolution of such questions. But we did not address in *Marino* I the adequacy of RCW 39.33.010 with respect to rights of intervention during and a right of appeal from the surplus value proceeding. The question was not justiciable since no RCW 39.33.010 proceeding had occurred. Marino's claims in this regard are not barred.

 The Port also argues that all of Marino's claims with regard to RCW 39.33.010 are rendered moot by the Legislature's amendment of RCW 39.33 in 1981. The Port's mootness argument is not well taken. The amendments to RCW 39.33 are prospective in effect. Statutes will be construed to have prospective application unless a contrary intent is apparent. *Haddenham v. State,* 87 Wn.2d 145, 550 P.2d 9 (1976); *Johnston v. Beneficial Management Corp. of Am.,* 85 Wn.2d 637, 538 P.2d 510 (1975); *State v. Heath,* 85 Wn.2d 196, 532 P.2d 621 (1975); *Bruenn v. North Yakima Sch. Dist. 7,* 101 Wash. 374, 172 P. 569 (1918). The purpose of the 1981 amendments was to limit the transaction costs for local governments in disposing of their surplus property. To construe the amendments retrospectively would only give new procedural burdens to local entities that have already proceeded under the former provisions of the statute and would confound the purposes of the amendment.[2]

---

[2]In articulating its mootness argument, the Port is also incorrect in its construction of the 1981 amendments. In 1981, the Legislature eliminated the proviso of RCW 39.33.010 requiring a judicial determination that property is surplus. The Legislature also created a new section of the statute requiring a public hearing before "disposing of surplus property with an estimated value of more than five thousand dollars". RCW 39.33.020. The Port interprets the new sections as establishing that property need not be surplus to be transferred under RCW 39.33.010. Marino points out the Port's statutory construction would render the statute absurd. RCW 39.33 would provide greater procedural safeguards for the disposition of surplus property (under RCW 39.33.020) than for nonsurplus property

██ The mere prospective change in the statute does not moot Marino's claims as to the old procedures. A legislative amendment of a statute does not foreclose the court from examining the constitutionality of proceedings that occurred in this case. Elimination of the challenged practice does not deprive a court of its power to determine the legality of the practice. *See Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 71 L. Ed. 2d 152, 102 S. Ct. 1070 (1982). Since the 1981 amendments confer even greater discretion on local entities in disposing of surplus property, Marino's claims have continuing relevance.

Examining the merits of Marino's remaining claims, we must first understand the nature of the old version of RCW 39.33.010. It was a watchdog statute, establishing a proceeding of limited scope to scrutinize the narrow question of a political subdivision's determination that property is surplus. As the trial court in *Marino* I stated: "RCW 39.33-.010 provides that forum and reflects the legislative intent that some policy decisions should be left to the municipal corporation involved with a limited overview by the court as provided therein." Clerk's Papers, at 321.

As to Marino's intervention claim 4, the court in *In re Bellingham*, 52 Wn.2d 497, 498, 326 P.2d 741 (1958), discussed in dicta the nature of intervention rights under the statute:

> [T]he statute only contemplates a hearing at which all interested parties can express an opinion and introduce pertinent evidence for or against the granting of the petition without the necessity of intervention by formal pleadings.

Marino argues it is entitled to intervention as of right pursuant to CR 24(a)(2), which confers such a right

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action

---

(under RCW 39.33.010). What little legislative history is available supports Marino. *See* 1981 Final Legislative Report, 47th Legislature, SB 3067, at 113. Both RCW 39.33.010 and RCW 39.33.020 relate to surplus property.

may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ Marino argues it has an interest similar to the intervenors in *Loveless v. Yantis*, 82 Wn.2d 754, 513 P.2d 1023 (1973) whose property would have suffered a "diminution in value . . . resulting from the action of defendants." *Loveless*, at 758. Even if we were to assume Marino's interest establishes a right of intervention, the extent of intervention rights is subject to case–by–case determination.

[I]t is for the court in each instance to analyze and balance the relative concerns, not only of the absentee in having his interest protected, but also of the parties to the main action in controlling their own lawsuit, and of the public in the efficient resolution of controversies.

*American Discount Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 42, 499 P.2d 869 (1972).

The proceeding under RCW 39.33.010 is for the limited purpose of ascertaining whether property is "surplus." The trial court's grant of limited intervention allowed Marino to make its arguments regarding whether the property is "surplus" while at the same time avoiding unnecessary and somewhat dilatory discovery. As the result of *Marino* I, subsequent public hearings, and the Port's adoption of resolution 2797, Marino appeared fully aware of the Port's basis for seeking a "surplus" determination, and appeared capable of arguing why the trial court should not find parcel A surplus. Marino's intervention rights were tempered by the nature of the proceeding, which was not fully adversarial. The trial court's grant of limited intervention rights to Marino was appropriate.

■■ Marino's claim of a right to appellate review (claim 5) is controlled by *In re Bellingham, supra,* in which we stated no right of appeal exists under the statute. *In re Bellingham*, at 498–99. We may, however, exercise our inherent power of review to determine if the trial court's determination is arbitrary, capricious or contrary to law. *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 643 P.2d

426 (1982).

Under this standard of review, the Port's determination that parcel A is surplus is defensible (issue 6). Marino's basis for challenging this determination is that property necessary to the Port cannot be surplus. See resolution 2797, § 2(d). In *Marino* I we authorized transfer of restricted legal title and acknowledged the Port would retain most of the indicia of ownership. It needed them to operate its functions at Terminal 91. The Port has made a judgment that it does not need the bare legal title to parcel A for it to make necessary use of the property. It declared that "property right", RCW 39.33.010, "surplus", and retained powers over aspects of the parcel that were necessary to its Terminal 91 activities.

Thus, the apparent contradiction Marino focuses on is not a contradiction at all. The Port declared surplus that which it did not need—the bare legal title. It retained the "indicia of ownership" over the part of the property it needed.

In conclusion, RCW 39.33.010 was a valid exercise of legislative power. The limited intervention afforded Marino by the trial court was appropriate. Exercising our inherent power of review, we hold the Port's declaration that parcel A is surplus is not arbitrary or capricious or contrary to law.

Both lower court decisions are affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.